```
NEHORAY LEGAL GROUP
MAC E. NEHORAY, ESQ. SBN# 147168
24007 VENTURA BOULEVARD
SUITE 110
CALABASAS, CALIFORNIA 91302
TELEPHONE: (818)222-2227
Mac@NehorayLegalGroup.com

ATTORNEY FOR PLAINTIFF
```

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAW OFFICES OF KAMBIZ DRAKE, | CASE#: 2:19-cv-00701-GW(SKx) |
| Plaintiff(s) | AMENDED APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT RONALD A. GREGG |
| VS. | F.R.C.P. 55(b)(2) |
| RONALD A. GREGG, ET AL., | DATE: SEPTEMBER 5, 2019<br>TIME: 8:30 AM<br>CTRM: 9D |
| Defendants. | |

TO THE COURT OF THE ABOVE ENTITLED COURT:

Plaintiff, Law Offices of Kambiz Drake (hereinafter "Drake"), hereby requests that the Court in the above-titled action grant Plaintiff's Request for Default Judgment against Defendant, Ronald A. Gregg (hereinafter "Gregg").

Copies of the Complaint and Summons were served on Gregg on February 21, 2019. Gregg's response was due on March 14, 2019. Gregg never filed a response.

APPLICATION FOR DEFAULT JUDGMENT    1

On May 22, 2019, Drake submitted his Request for Entry of Default against Gregg. On May 23, 2019, Gregg's Default was entered by the Clerk of the Court. (Exhibit 2 ¶1)

Defendant, Ronald A. Gregg, is a competent adult and is not in the military and as such Servicemembers Civil Relief Act (50 U.S.C. App. §521) does not apply. (Exhibit 2 ¶2)

Defendant, Ronald A. Gregg, has not appeared personally or by counsel in this matter and as such, according to FRCP §55(b)(2), no notice has been served on Defendant. (Exhibit 2 ¶3)

Plaintiff hereby submits the following in support of his Request for Default Judgment.

## STATEMENT OF FACTS

1. Plaintiff's complaint has seven (7) causes of action against Defendant, Ronald A. Gregg, for Fraud, Negligence, Breach of Contract, Breach of Fiduciary Duty, Violation of California Penal Code §496, Conversion and Unjust Enrichment.

2. Drake is a paymaster for several buyers and sellers who desire to buy and sell large number of Bitcoins. (Exhibit 3 ¶2)

3. There are usually many intermediaries involved in such transactions for both the buyer and the seller. (Exhibit 3 ¶3)

4. In the instant case, Drake had a buyer named MARTO CRYPTO TRADING, LLC. (hereinafter "Buyer" or "MARTO") who was desirous of purchasing large number of Bitcoins and Gregg (Attorney licensed in the State of New York) represented to Drake that he had a seller (hereinafter "Seller") who was interested in selling his Bitcoins. (Exhibit 3 ¶5-8)

5. Thereafter, Drake and Gregg entered into negotiations whereby it was agreed that Drake's Buyer would transfer its funds to Drake who in turn would wire the funds to Gregg to be held in Gregg's IOLTA account until verification of transfer of Bitcoins to the Buyer and upon verification of transfer of Bitcoins, Gregg then would release the funds held in his IOLTA account to the Seller. (Exhibit 3 ¶9-12)

6. On or about January 8, 2019, Drake and Gregg entered into a written agreement (Exhibit "1") for Escrow Services to be provided by the Gregg with regard to purchase by the "Buyer" and sale by the "Seller" of BITCOINS (hereinafter the "Agreement"). (Exhibit 3 ¶13)

7. The Material Terms of the Agreement were as follows:

    A. Seller and Buyer agree to a price and confirm the transaction for the day.

    B. Buyer, through Drake, wires funds to Gregg's IOLTA account.

    C. Gregg confirm that cash has settled and available in escrow.

    D. Seller immediately sends agreed upon BITCOINS to Buyer's designated Wallet address.

    E. Buyer confirms receipt of BITCOINS after 6 verifications through Blockchain.

    F. Buyer notifies Gregg that the BITCOINS have been received.

    G. Buyer instructs Gregg to release the funds to the Seller.

    H. Gregg release the funds to Seller's bank account only after instructions have been received from the Buyer.

        I. Seller confirms with Buyer that transaction is closed and completed. (Exhibit 3 ¶14)

8. The Agreement further provided that the Drake's funds were to be returned by the Gregg to Drake if:

        A. BITCOIN transaction never settles on the Blockchain.

        B. There is no record on BITCOIN's block explorer of the transaction being sent.

        C. The BITCOINS do not reach the Buyer's wallet address within 3 hours of the funds being transferred to Gregg.

        D. Buyer's chain analysis check proves that the BITCOINS are fraudulent or connected to nefarious wallet addresses.(Exhibit 3 ¶13)

9. On January 11, 2019, MARTO transferred the amount of $362,272.00 to Drake's IOLTA account. Drake in turn wired said amount to Gregg's IOLTA account to be kept as escrow funds and not to be released by Gregg until all the condition of the Agreement were met. (Exhibit 3 ¶16)

10. Upon receipt of the funds from Drake into Gregg's IOLTA account, Gregg proceeded to acknowledge to Drake the receipt of the funds as mandated, however, no BITCOINS were transferred to the Buyer's wallet address within 3 hours of the receipt of the escrow funds by Gregg. (Exhibit 3 ¶17)

11. Upon contacting Gregg and advising him that no BITCOINS were transferred, Gregg advised Drake that Gregg could not get in touch with the Seller as the Seller was on a plane. Gregg assured Drake that once the Seller landed, the BITCOINS were going to be transferred.

APPLICATION FOR DEFAULT JUDGMENT      4

(Exhibit 3 ¶18)

12. Gregg further advised Drake that the funds were still in his IOLTA account and that they would not be transferred to the Seller until Gregg received instructions to do so by the Buyer. (Exhibit 3 ¶19)

13. By January 12, 2019, it was apparent that the Seller was not transferring any BITCOINS to the Buyer, so I requested that Gregg return the funds being held in Gregg's IOLTA account immediately. (Exhibit 3 ¶20)

14. From January 11, 2019 through January 14, 2019 Gregg assured Drake that Gregg was in possession of the funds and that the funds were going to be wired back to Drake. (Exhibit 3 ¶21)

15. On January 15, 2019, Drake discovered that on January 11, 2019, immediately upon receiving the funds from Drake, Gregg had transferred all of the funds to a third party in Michigan and as of this date, the funds have not been returned by Gregg to Drake. (Exhibit 3 ¶22)

16. The Agreement between Drake and MARTO (Exhibit "4") states:
> "At all time Escrow Agent (Law Offices of Kambiz Drake) will remain Fiduciary of the funds. In the event the Depositor (MARTO) does not receive transacted coins and the escrow account does not have sufficient funds to be returned to the Depositor, the Escrow Agent will be liable for the return of the funds to the Depositor."

17. As the responsible party for the funds, Drake became the real party in interest and therefore had standing to file the instant lawsuit against Defendants to recover the funds so that he could return the money to MARTO.

## ARGUMENT

### STANDARD OF REVIEW

18. On a motion for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court accepts as true the facts alleged in the complaint: "[B]y defaulting, the [defendant is] deemed to have 'admit[ted] the plaintiff's well-pleaded allegations of fact' for purposes of liability." Coton v. Televised Visual X-Ography, Inc., 740 F. Supp. 2d 1299, 1307 (M.D. Fla. 2010) (quoting Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987)); Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. App'x 860, 863 (11th Cir. 2007); Shandong Airlines Co. v. CAPT, LLC, 650 F. Supp. 2d 1202, 1206 (M.D. Fla. 2009) (citing Buchanan).

19. If the admitted facts establish the defaulting defendant's liability, the plaintiff is entitled to relief against that defendant. See Shandong Airlines, 650 F. Supp. 2d at 1206; United States v. Henley, Civ. No. 8:10-2208-T-24-TGW, 2011 WL 1103894, at *2 (M.D. Fla. Mar. 25, 2011) (citing Tyco Fire).

20. Pursuant to Fed. R. Civ. P. 54(c), the relief awarded "must not differ in kind from, or exceed in amount, what is demanded in the [complaint]." See Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc., No. 10-12238, 2011 WL 311680, at *2 (11th Cir. 2011); Magee v. Maesbury Homes, Inc., 2011 WL 1457173, at *2

(M.D. Fla. Apr. 15, 2011); Enpat, Inc. v. Budnic, 2011 WL 1196420, at *1 (M.D. Fla. Mar. 29, 2011).

## CHOICE OF LAW

21. Paragraph P of the Contract (Exhibit 1) states:

> "This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and to be performed entirely within such State. Each of the parties hereto(I) will submit itself to the non-exclusive jurisdiction of any federal court located in the County of Los Angeles . . ."

22. Furthermore, paragraph P of the Agreement between Drake and MARTO (Exhibit "4") also states that the Governing Law and Jurisdiction for any lawsuit would be California.

23. As such, the parties have agreed to the above venue and choice of law.

## FIRST CAUSE OF ACTION FOR FRAUD

24. Gregg made a promise to Drake about a material fact without any intention of performing it. Gregg promised that the funds which were going to be wired to his IOLTA account was not going to leave the account until after the BITCOINS had been received by the Buyer and the Buyer had instructed Gregg to release the funds.

25. At no time did Gregg intended to keep his promise of keeping the funds in his IOLTA account. This promise was made by

Gregg with the intent to induce Drake to rely upon it and to wire the funds to Gregg's IOLTA account. At the time Drake acted, Drake was unaware of Gregg's intention not to perform the promise. Plaintiff acted in justifiable reliance upon Defendants' promise.

26. In justifiable reliance upon Gregg's conduct, Drake was induced to wire the sum of $346,272.00 to Gregg's IOLTA account and instead of keeping said amount safe in their IOLTA account, Gregg immediately transferred the funds to a third party.

27. Because of Drake's reliance upon Gregg's promise, Drake has been damaged in the amount of $346,272.

28. Gregg's act of immediately releasing the funds to a third party and his subsequent misrepresentation that the funds were still in his IOLTA account if further proof that Gregg's plan was to induce Drake to wire the money and in turn Gregg would immediately wire the money to a third party. This was not an accident. This was an intentional act and the timing of such act is further proof that Gregg had no intention to keep his promise at the time he made it.

29. These fraudulent acts of Gregg, were intentional, malicious, and done in conscious disregard of the rights of Drake that by reason of these fraudulent acts, Drake is entitled to punitive and exemplary damages in a sum $500,000.00 from Gregg or in the alternative upon this honorable Court discretion.

**SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT**

30. Pursuant to paragraph "F" of the Agreement (Exhibit 1), Gregg agreed to keep the funds which were wired by Drake into

1 Gregg's IOLTA account safe until such time as the BITCOINS had been
2 transferred to the Buyer and the Buyer had instructed Gregg to
3 release the funds.
4    31.  Gregg failed to keep said funds in his IOLTA account and
5 proceeded to transfer the funds to a third party immediately upon
6 receiving said funds thus breaching the Agreement between the
7 parties.
8    32. Additionally, the Agreement in paragraph "F" further
9 provided that if the BITCOINS were not transferred to the Buyer,
10 Gregg agreed to return the funds to Drake.
11    33. Again, Gregg breached said Agreement by failing to return
12 the funds to Drake despite repeated requests from Drake.
13    34.  As a result of each Gregg's breach of the Agreement as
14 set forth above, Drake has suffered damages in the amount of
15 $346,272.00 plus interest from January 11, 2019.

### THIRD CAUSE OF ACTION FOR NEGLIGENCE

17    35. Gregg had a duty of care to Drake to refrain from
18 transferring the funds wired to his IOLTA account by Drake until
19 further instruction by the Buyer.
20    36. Gregg breached his duty of care to Drake and thus was
21 negligent as they failed to keep safe the funds in his IOLTA
22 account and proceeded to transfer the fund to a third party.
23    37. As a direct and proximate result of the Gregg's
24 negligence, Drake has suffered damages in the sum of $346,272.00.

### FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

26    38. By entering into and forming an Escrow Agreement (Exhibit

"1") under the laws of the State of California, a relationship existed between Gregg and Drake. Inherent in and arising from this relationship are the fiduciary duties of loyalty, integrity, candor and good faith.

39. Gregg breached his fiduciary duties to Drake by engaging in acts and omissions alleged herein including, among other things, failing to keep Drake's funds in Gregg's IOLTA account and failing to return Drake's funds pursuant to the parties' Agreement.

40. As a direct and proximate result of Gregg's breaches of fiduciary duties owed to Drake, Drake has suffered damage in an amount of $346,727.00.

41. As shown herein, Gregg committed the aforementioned acts maliciously and oppressively, with the wrongful intention of injuring Drake, from an improper and evil motive amounting to malice, and in conscious disregard of Drake's rights. Drake is thus entitled to recover punitive damages from Gregg in an amount of $500,000.00 from Gregg or in the alternative upon this honorable Court discretion.

**FIFTH CAUSE OF ACTION VIOLATION OF CALIFORNIA PENAL CODE §496**

42. But for the intentional bad acts of Gregg as set forth herein, which acts are hereby alleged to have been violative of <u>California Penal Code</u> Section §496, Plaintiff would not have been damaged.

43. The taking and or obtaining of monies from Drake by Gregg as described herein, was a taking of said monies by false pretenses violative of <u>California Penal Code</u> Section §496 which criminal

statute means exactly the taking as described herein was a theft by false pretense and under and pursuant to California Penal Code Section §496 entitles Drake to a judgment of treble damages as well as for attorney fees incurred.

44. Drake's attorney fees so far has been $29,865.00. (Exhibit 2 ¶ 4)

45. Amount of treble damages is $1,040,181.00.

### SIXTH CAUSE OF ACTION FOR CONVERSION

46. Drake was the rightful owner of the $346,272.00, the monies entrusted in Gregg's custody and care.

47. Gregg has completely failed and/or refused to account for the use of Drake's funds and has completely failed and/or refused to return any of Drake's funds.

48. Instead, Gregg wrongfully, unlawfully and intentionally converted Drake's funds for Gregg's personal use in its entirety.

49. Drake in no manner consented to Gregg's misappropriation of his funds.

50. Drake has performed all of the conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the parties Agreement.

51. As a direct and proximate result of Gregg's conversion of Drake's funds, Drake has suffered damages in the sum of $346,272.00 plus attorney fees and prejudgment interest.

### SEVENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

52. As a result of the wrongful acts of Gregg, Gregg has been unjustly enriched at the expense of Drake. Gregg has derived and

continue to derive a benefit from failing to perform his contractual obligations pursuant to the parties' Agreement.

53. Gregg is under an obligation to pay Drake forthwith $346,272.00 which represents all amounts by which Gregg has been unjustly enriched.

**FACTORS TO BE CONSIDERED**

**FOR ENTRY OF DEFAULT JUDGMENT**

54. In *Eitel v. McCool*, 782 F2d. 1470(9th Cir. 1986), the court set forth 7 factors to be considered for entry of Default Judgment. They are:

> "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits".

55. In the present case all 7 factors are met. If the Default Judgment is not entered, it will be highly prejudicial to Plaintiff.

56. As to merits of Plaintiff's claim, Plaintiff has shown to the court that Defendant lied to Plaintiff in order to induce Plaintiff to wire him the funds. Even after the funds were wired,

Defendant kept lying to Plaintiff about the whereabouts of the funds and to this date, Defendant has refused to return Plaintiff's funds.

57. The complaint has plead each of cause of actions in detail and with particular sufficiency to enable the court to judge the merits of Plaintiff's claims.

58. The sum of money at stake is substantial to Plaintiff.

59. Defendant absolutely has no defense as to any of Plaintiff's causes of action. The fact that Defendant, who himself practices law in New York, has refused to participate in this lawsuit after being served, supports Plaintiff's position that there exists no disputes as to the facts of this case.

60. The Default in this case was not entered due to any excusable neglect. Defendant was served by a licenses process server. Defendant has refused to participate in this litigation.

61. There exists the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Plaintiff has done everything in his power to get Defendant to come and participate and defend himself. However, Defendant has chosen not to participate as he has no defenses to this lawsuit.

Furthermore, Plaintiff has sufficiently discussed and made the court aware of the merits of this case. If Defendant refuses to participate, Plaintiff is left with no other choice. Defendant's default was entered several months after Defendant was served with a copy of the Summons and Complaint. As such, there are no other avenues open to Plaintiff other than having this matter conclude

through Default Judgment.

59. Plaintiff hereby requests this honorable court to enter Default Judgment against Defendant as follows:

**AS TO THE FIRST CAUSE OF ACTION**

1. Compensatory Damages in the amount of $346,272.00;
2. Punitive Damages in the amount of $500,000.00 or upon discretion of the court.

**AS TO THE SECOND CAUSE OF ACTION**

1. Compensatory Damages in the amount of $346,272.00.

**AS TO THE THIRD CAUSE OF ACTION**

1. Compensatory Damages in the amount of $346,272.00

**AS TO THE FOURTH CAUSE OF ACTION**

1. Compensatory Damages in the amount of $346,272.00;
2. Punitive Damages in the amount of $500,000.00 or upon discretion of the court.

**AS TO THE FIFTH CAUSE OF ACTION**

1. Attorney fees in the amount of $29,865.00;
2. Treble damages in the amount of $1,040,181.00.

**AS TO THE SIXTH CAUSE OF ACTION**

1. Compensatory Damages in the amount of $346,272.00.

**AS TO THE SEVENTH CAUSE OF ACTION**

1. Compensatory Damages in the amount of $346,272.00.

**ON ALL CAUSES OF ACTION**

1. Pre Judgment Interest at the rate of 10% per annum starting January 11, 2019;
2. Costs of Suit;

3. Any other sums the court deems appropriate.

Dated: August 27, 2019

                                        Nehoray Legal Group

                                        *Mac Nehoray*
                                        _____
                                        Mac E. Nehoray
                                        Attorney for Plaintiff